# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  OCTOBER 28, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0178-MR

ANTONIO WHARTON                                           APPELLANT

ON APPEAL FROM TRIGG CIRCUIT COURT
V.           HONORABLE CLARENCE A. WOODALL, III, JUDGE
NO. 2018-CR-00021

COMMONWEALTH OF KENTUCKY                       APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Antonio Wharton (Wharton) was found guilty of first-degree trafficking in a controlled substance (four grams or more of cocaine), possession of drug paraphernalia, and of being a first-degree persistent felony offender.  He now appeals the resulting twenty-year sentence as a matter of right.[1]  The sole issue on appeal is whether the trial court erred by denying Wharton's motion to suppress the fruits of a search warrant, which Wharton argues was illegal and not supported by probable cause.  After review, we affirm.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

On January 8, 2018, officers of the Trigg County Sherriff's Office (TCSO) sought a search warrant for Wharton's residence.  The search warrant affidavit,

---

[1] Ky. Const. § 110(2)(b).

given by TCSO Deputy Jarred Werner, stated the following in support of the

warrant:

> On the 8th day of January, 2018 between the hours of 0600 and 2000 hours, the Trigg County Sheriff's Office conducted a controlled buy of crack cocaine from the above address.
>
> Affiant received information from/observed: a confidential informant who stated that he/she could purchase narcotics from Antonio Marquis Wharton, hereinafter Antonio Wharton, a person known to the Trigg County Sheriff's Office to have a history of trafficking in narcotics. The confidential informant stated that he/she was familiar with Antonio Wharton and that he/she could positively identify him. The confidential informant positively identified Antonio Wharton by photograph. The confidential informant stated that he/she was familiar with the address of Antonio Wharton,[...], and that he/she had purchased narcotics from Antonio Wharton at that address multiple times from October 2017 until last week, and that he/she had most recently purchased narcotics from Antonio Wharton at that address four days ago. The TCSO could independently corroborate Antonio Wharton's address information by having served him civil service at that address.
>
> Acting on the information received, affiant conducted the following independent investigation; TCSO arranged for the confidential informant to make a controlled purchase of suspected crack cocaine from Antonio Wharton at the [...], address as provided. The confidential informant telephoned Antonio Wharton and arranged a purchase of crack cocaine at [his address], and the TCSO recorded the conversation. The TCSO provided the confidential informant with buy money and the serial numbers were recorded by photocopying the bills. The confidential informant and the vehicle were searched, and the TCSO established positive contact with the confidential informant by cellular telephone, which was audio recorded. The TCSO monitored the confidential informant driving to [Wharton's address]. The drug transaction lasted less

2

than a minute and the informant was monitored leaving and traveling back to the TCSO.

At the SO [(sheriff's office)] the informant delivered approximately 1 gram of crack cocaine.

The informant stated Antonio Wharton stepped out of the front door, with suspected cocaine in hand, and then completed the drug transaction. TSCO field tested the substance, with a positive result for cocaine.

Based on the above affidavit, a search warrant was issued, and Wharton's residence was searched. The search yielded the following items:

- One box of clear baggies with one box of straight razor blades;

- One plastic money jar containing $23.64;

- $58.00 located in a purse;

- Eight small rocks of cocaine;

- One small digital scale;

- $13,840.00 cash;

- $29.00 cash;

- $720.00 cash;

- One solid brick of suspected cocaine approximately one and one-half inches in diameter.

Wharton was indicted by way of grand jury for trafficking in a controlled substance weighing more than four grams, wanton endangerment, possession of drug paraphernalia, trafficking in a controlled substance weighing less than four grams, and of being a persistent felony offender.

On June 11, 2018, Wharton moved to suppress all the evidence collected as a result of the search warrant, alleging that it was illegal. The trial court heard argument concerning the motion to suppress as required by RCr[2] 8.27. Wharton asked the trial court to allow him to call Deputy Werner to testify. The Commonwealth objected to Wharton calling witnesses.[3] In response to the objection, defense counsel stated on the record the grounds for the motion to suppress: "I don't know that we are challenging specifically probable cause, we are challenging the timing of the warrant, the signing of the warrant. There is no time listed or date listed on the warrant itself. That's what we are challenging." The trial court allowed the testimony only to address any issue of credibility of the confidential informant (CI), if it were raised.

The hearing produced more evidence than that contained in the affidavit, and this evidence was largely consistent with that contained in the affidavit. The only differences being that Deputy Werner testified that the transaction occurred between 6:00 p.m. and 8:00 p.m., rather than between 6:00 a.m. and 8:00 p.m., and that the transaction was not recorded, but was listened in on via an open call with the CI.

At the conclusion of the hearing, the Commonwealth argued that defense counsel had not submitted any proof that the search warrant was not valid, and asked the court to deny the motion to suppress. Defense counsel argued

---

[2] Kentucky Rule of Criminal Procedure.

[3] The Commonwealth objected on the grounds that the trial court was not to look beyond the four corners of the warrant and affidavit pursuant to *Commonwealth v. Pride*, 302 S.W. 3d 43 (Ky. 2010).

that there was insufficient probable cause for the warrant to be issued because the time frame included in the search warrant was too large to be reliable and rendered the search warrant invalid.

The trial court rendered an order denying Wharton's motion to suppress and made the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. The Defendant, Antonio M. Wharton is charged in this case as follows:
    Count I-Trafficking in a Controlled Substance, First Degree, Subsequent Offense, a class B Felony;
    Count Il-Wanton Endangerment, First Degree, a Class D Felony;
    Count III- Possession of Drug Paraphernalia, Complicity, a Class A Misdemeanor;
    Count IV- Trafficking in a Controlled Substance, First Degree, Subsequent Offense, a Class C Felony; and Count V- Persistent Felony Offender, First Degree.

2. On January 8, 2018, Trigg County Deputy Sheriff Jared Werner was involved in a controlled buy of drugs by a confidential informant from the Defendant Antonio M. Wharton. The CI was monitored by cell phone in an "open call."

3. The CI purchased drugs from the Defendant on that date between the hours of 4:00 p.m. and 9:00 p.m.

4. After the transaction, Sheriff Deputies obtained a search warrant from Trigg District Court.

5. Marked bills had been used for the buy but were not recovered as a result of the search.

6. Items that were seized as a result of the search warrant include: Box of clear baggies with box of straight razorblades; money jar (plastic); $23.64 found child's room top dresser; $58.00 cash from woman's purse found on kitchen table; 8 small rocks of

5

suspected crack cocaine (under mattress child's room); 1 small digital scale under mattress in child's room; $13,840.00 cash found in box spring in child's room;

$29.00 cash found on kitchen table; $720.00 cash from wallet on MB dresser; and solid block of suspected cocaine approximately 1 ½ inch in diameter.

7. There was no audio or video tape of the transaction itself.

8. Deputy Werner had the CI in view at the time of the purchase and sale outside the residence but not inside Defendant's residence. The transaction itself took place outside the residence.

9. Probable cause was established for the issuance of the search warrant based upon the totality of the circumstances.

### CONCLUSIONS OF LAW

1. In reviewing an affidavit for issuance of a search warrant, extrinsic evidence is generally not admissible to supply deficiencies and in determining the existence of probable cause, the Court must consider the affidavit on its face. *See Horn v. Commonwealth*, 240 S.W.3d 665 (Ky. App. 2007).

2. Defendant has the burden of proof that the search warrant or affidavit were defective.

3. Under the totality of the circumstances, there was probable cause for issuance of the search warrant.

4. The search of Defendant's residence and person did not violate his constitutional rights.

The Commonwealth proceeded on the charges of trafficking in a controlled substance weighing more than four grams, possession of drug paraphernalia, and of being a persistent felony offender. The case went to trial, where a jury convicted Wharton on all three counts.

6

## II. ANALYSIS

Wharton contends on appeal that the affidavit supporting the search warrant contained intentional or reckless material omissions that render the affidavit insufficient to support a finding of probable cause violative of the U.S. Supreme Court's holding in *Franks v. Delaware*.[4] Wharton raises the following issues with the search warrant affidavit: that Deputy Werner lost contact with the CI sometime between leaving the station and arriving at Wharton's residence; that no officer remained at the residence while Deputy Werner and other officers sought the search warrant; that the transaction was not recorded even though the affidavit claimed it was; and that the affidavit did not establish the reliability of the CI. Wharton contends that, because the CI was unreliable and the affidavit did not state with specificity when the transaction occurred, the issuing court did not base its finding of probable cause on substantial evidence. Therefore, on appeal, Wharton claims that the trial court improperly made its factual determination because it was based upon intentionally false statements or statements made with reckless disregard for the truth contained in the affidavit. And, that those falsities, coupled with the fact that the CI's reliability was not established in the affidavit, were not sufficient to support the warrant-issuing judge's finding of probable cause to issue the warrant.

---

[4] 438 U.S. 154 (1978).

The Fourth Amendment and the Kentucky Constitution prohibit unreasonable searches or seizures.[5] A search is reasonable if it is supported by a warrant and an accompanying affidavit sufficient to establish probable cause.[6] When a criminal defendant believes that the underlying affidavit contains intentional or reckless falsehoods or omits material facts, he may raise that allegation before the trial court and seek suppression of evidence gained as a result of the issuing warrant.[7] However, a defendant is not entitled to a hearing pursuant to *Franks* unless he first makes a "substantial preliminary showing" that the affidavit contained intentional or recklessly false statements.[8] If a defendant is able to make such a showing, and proves that the affidavit contains intentionally false statements or statements made with reckless disregard for the truth, then the trial court must strike those statements and determine if the remainder of the affidavit is sufficient to support probable cause.[9]

Not only did the Appellant fail to make a "substantial preliminary showing" of police misconduct regarding the affidavit to merit a hearing under *Franks*, he never alleged to the trial court that the affidavit contained

---

[5] U.S. Const. amend. IV.; Ky. Const. § 10.

[6] *Commonwealth v. Pride*, 302 S.W.3d 43, 50 (Ky. 2010).

[7] *Franks*, 438 U.S. at 171.

[8] *Rawls v. Commonwealth*, 434 S.W.3d 48, 57 (Ky. 2014) (citing *Minks v. Commonwealth*, 427 S.W.3d 802, 806 – 07 (Ky. 2014)).

[9] *Franks*, 438 U.S. at 155–56.

intentionally false statements or statements made with reckless disregard for the truth. Moreover, he did not urge the trial court to strike portions of the affidavit, did not direct the trial court's attention to material omissions, whether intentional or reckless, that would necessitate a finding that the warrant was not supported by probable cause, and did not argue that the CI was unreliable. And, the Appellant produced no evidence supporting a claim to that effect. Rather, Wharton's motion appears to have been "a straightforward challenge to the affidavit as insufficient within its four corners."[10] Therefore, contrary to what the Appellant now argues, he did not challenge the affidavit's "presumption of validity" before the trial court.[11]

On appeal, Wharton asks this Court to scrutinize the sufficiency of the affidavit. However, we are confined to address only those issues raised before the trial court, where an adequate record can be developed.[12] We review "for errors, and a nonruling cannot be erroneous when the issue has not been presented to the trial court for decision."[13] Therefore, though the crux of the Appellant's argument on appeal centers on the sufficiency of the affidavit, we cannot address his claim that the trial court erred by finding that the affidavit

---

[10] *Minks*, 427 S.W.3d at 810.

[11] *Franks*, 438 U.S. at 171.

[12] *Commonwealth v. Smith*, 542 S.W.3d 276, 285 (Ky. 2018) (citing *Combs v. Knott County Fiscal Court*, 141 S.W.2d 859, 860 (1940)).

[13] *Smith*, 542 S.W.3d at 285 (quoting *Hatton v. Commonwealth*, 409 S.W.2d 818, 819-20 (Ky. 1966)).

was sufficient when he made no such challenge to the affidavit's sufficiency before the trial court and the trial court made no such finding of sufficiency.[14]

As a result, we only examine the issue actually raised before the trial court and preserved for appellate review: whether the trial court erred in denying the Appellant's motion to suppress on its finding of probable cause for the warrant to issue.[15]

This Court established the appellate standard of review for motions to suppress in *Commonwealth v. Pride*:

> [t]he proper test for appellate review of a suppression hearing ruling regarding a search pursuant to a warrant is to determine first if the facts found by the trial judge are supported by substantial evidence, and then to determine whether the trial judge correctly determined that the issuing judge did or did not have a 'substantial basis for ... conclud[ing]' that probable cause existed. In doing so, all reviewing courts must give great deference to the warrant-issuing judge's decision.[16]

Wharton contends that there are several key pieces of evidence that establish that the trial court did not have a substantial basis to support its findings of fact. First, that he was not identified by Deputy Werner himself. Second, because the controlled buy took place in front of rather than inside his home, the address on the warrant was not confirmed. Third, that Deputy

---

[14] *Jenkins v. Commonwealth*, 607 S.W.3d 601, 613 (Ky. 2020) (stating "[t]his Court has held '[a]n appellate court is without authority to review issues not raised in or decided by the trial court.'") (citing *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009)).

[15] This issue was preserved for appellate review upon Wharton's motion to suppress and the trial court's denial of that motion. RCr 9.22.

[16] 302 S.W.3d at 49 (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

10

Werner could not hear the call, so the trial court should not have found that it was monitored by open call. Fourth, that Deputy Werner was located behind the residence, instead of in front of it, so it was improper for the trial court to find that Deputy Werner was at the scene during the buy.

Deputy Werner's testimony during the evidentiary hearing is contrary to each of these assertions. Deputy Werner stated that Wharton was the one who made the sale at Wharton's address within his view from behind the residence, and that he monitored the buy via open call. Deputy Werner specifically stated that the person making the sale was Wharton, and that he could see Wharton's silhouette going to and from Wharton's residence to make the sale. As a result, the trial court had a substantial basis to adopt its factual findings. Therefore, those findings are conclusive.

Our review of whether the warrant-issuing judge had a substantial basis to issue the warrant is limited to the four corners of the affidavit, and we will not consider extrinsic evidence to reach our decision.[17]

Wharton's contention that the unreliability of the CI precludes a finding of probable cause is without merit. Wharton argues that, because the CI was untested to Deputy Werner, her statements were no more than a "bare-boned" tip insufficient to establish probable cause.[18] Of course, if the affidavit only contained a vague statement by an anonymous informant who believed

---

[17] *Pride*, 302 S.W.3d at 49.

[18] *Florida v. J.L.*, 529 U.S. 266, 270 (2000).

11

Wharton to be trafficking in a controlled substance, then that would be insufficient to find probable cause.[19]  That, however, is not the case here.

The affidavit reflects that the CI offered much more than a mere tip: she told the police that she had been buying cocaine from Wharton since 2017, that she had purchased cocaine from him as recently as four days ago, and that she could purchase more cocaine from him.  These statements were corroborated when Deputy Werner personally verified that Wharton was selling cocaine via observing the controlled buy and subsequently testing the substance the CI purchased from the Appellant.  Further, the CI was not anonymous—the TSCO knew who she was.  Thus, this case does not present the same concerns as those at issue in *Florida v. J.L.*, wherein a warrant was issued following a "bare report of an unknown, unaccountable informant."[20]

From our "practical, common-sense" view, "given all the circumstances set forth in the affidavit," there exists "a fair probability that contraband or evidence of a crime" would be located at Wharton's residence.[21]  It was not improper for the warrant-issuing judge to find a "sufficient probability of criminal activity occurring at [Wharton's] house to support probable cause and the issuing of the warrant."[22]  Therefore, the circuit court's denial of Wharton's motion to suppress was proper.

---

[19] *See, e.g., Lovett v. Commonwealth*, 103 S.W.3d 72, 78 (Ky. 2003).

[20] 529 U.S. at 271.

[21] *Minks*, 427 S.W.3d at 810 (quoting *Gates*, 462 U.S. at 238).

[22] *Pride*, 302 S.W.3d at 51 (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

12

### III. CONCLUSION

The search warrant was supported by probable cause. We need not address whether the good faith exception would have justified the denial of Wharton's motion to suppress on alternative grounds. Accordingly, we affirm the judgment of the Trigg Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Roy A. Durham, II
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Office of the Attorney General